IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JACK PAUL FINNEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security )<br>Administration, )<br>)<br>Defendant. | CIVIL ACTION NO.<br>5:12-cv-2077-AKK |

## MEMORANDUM OPINION

Plaintiff Jack Paul Finney ("Finney") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Finney filed an application for Title II disability insurance benefits and Title XVI Supplemental Security Income, on January 22, 2009, alleging a disability onset date of September 12, 2008, due to fatigue, and problems with his back, leg, stomach, and heart.  (R. 16, 210).  After the SSA denied Finney's claim, he

requested a hearing before an ALJ. (R. 98-99). The ALJ subsequently denied Finney's claim, (R. 13-27), which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6). Finney then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)   whether the claimant is currently unemployed;

(2)   whether the claimant has a severe impairment;

  (3) whether the impairment meets or equals one listed by the Secretary;

  (4) whether the claimant is unable to perform his or her past work; and

  (5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

  In performing the five step analysis, the ALJ initially determined that Finney met the insured status requirements of the Act through September 30, 2011.  (R. 18).  Moving to the first step, the ALJ found that Finney had not engaged in substantial gainful activity since September 12, 2008, and, therefore, met Step One. *Id.*  Next, the ALJ found that Finney satisfied Step Two because he suffered from the severe impairments of "coronary artery disease and obesity." *Id.*  The ALJ then proceeded to the next step and found that Finney failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 20).  Although the ALJ

answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Finney

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with the following considerations: he can stand and walk at most four hours in an eight-hour workday, with no more than fifteen minutes at a time before having to sit down and change positions; he should only occasionally balance, stoop, kneel or crouch; and he should only occasionally climb ramps or stairs.  He can perform fine manipulations without limitation.  He can frequently use the right upper extremity for gross movements and pushing or pulling, and he does not have any limitations for gross motor movements, pushing and pulling with the left upper extremity.  Additionally, he should avoid exposure to extremely cold environments.

(R. 20).  As of the date of the ALJ's decision, Finney was 48 years old, (R. 25), and had past relevant work that included light unskilled work as a machine cutter and outside deliverer, medium semiskilled work as an automobile station attendant and janitor, and heavy semiskilled work as a material handler. *Id.*  In light of his RFC, the ALJ held that Finney "is unable to perform any past relevant work." *Id.*  Lastly, in Step Five, the ALJ considered Finney's age, education, work experience, and RFC and determined "there are jobs that exist in significant numbers in the national economy [Finney] can perform."  (R. 26).   Therefore, the ALJ found that Finney "has not been under a disability, as defined in the Social Security Act, at any time from September 12, 2008, through the date of this decision."  (R. 27).

V.  Analysis

The court now turns to Finney's contentions that the ALJ erred in (1) failing to give greater weight to the opinions of Finney's treating physician; (2) giving significant weight to the opinion of the State agency reviewing physician; and (3) failing to develop the record because there is no medical source opinion supporting the ALJ's RFC assessment.  *See* doc. 8 at 6-11.  The court addresses each contention in turn.

  A. <u>The ALJ properly considered the opinions of Finney's treating physician.</u>

Finney argues the ALJ improperly rejected the opinions expressed by Dr. John C. Royse in a letter dated July 14, 2010.  Doc. 8 at 6-7.  That letter contains the following: "Mr. Finney is seen by me for one or more medical conditions.  He suffers from immobility due to his chronic pain in his back, shoulder, and arms.  Due to his conditions he is unable to work at this time." (R. 561).  According to Finney, this opinion establishes that he is disabled and it is reversible error for the ALJ to reject it.

In evaluating Finney's contention, the court notes that in determining how much weight to give to each medical opinion, the ALJ must consider several factors, including (1) whether the doctor has examined [Finney]; (2) whether the doctor has a treating relationship with [Finney]; (3) the extent to which the doctor presents medical evidence and explanation supporting his opinion; (4) whether the doctor's

6

opinion is consistent with the record as a whole; and (5) whether the doctor is a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c).  Under the Commissioner's regulations, a treating physician's opinion will receive controlling weight if it is well supported and not inconsistent with other substantial evidence in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  In this circuit, "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" exists when the evidence does not bolster the treating physician's opinion; a contrary finding is supported by the evidence; or the opinion is conclusory or inconsistent with the treating physician's own medical records. *Id*. If a treating physician's opinion is rejected, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion . . . and the failure to do so is reversible error." *Id.*

Here, the ALJ articulated multiple reasons for giving less weight to Dr. Royse's opinions.  Specifically, the ALJ , but found that the level of limitation expressed in Dr. Royse's letter "is not supported by the whole of the evidence, including Dr. Royse's treatment note of July 13, 2010, in which he recorded

7

[Finney's] report of problems with pain going into his left leg and worsened pain with bending and lifting, but [Finney] also reported good pain control with his medications." (R. 25). The ALJ also noted that even though Finney "walked with a limp and had decreased range of motion with pain and crepitus in the right shoulder, . . . these findings would not indicate general immobility, nor would they support a conclusion the claimant would be limited at such a level for the twelve-month durational requirement of the Act." *Id.*

The medical evidence supports the ALJ's decision. As an initial matter, Dr. Royce's opinion is conclusory because it does not specify the underlying cause of Finney's back, shoulder and arm pain. *See Lewis*, 125 F.3d at 1440 (good cause exists if the physician's opinion is conclusory); 20 C.F.R. §§ 404.1527(c), 416.927(c) (the extent to which the doctor presents medical evidence and explanation supporting his opinion is a factor weighed by the ALJ). Additionally, as the ALJ observed, Dr. Royse's treatment notes repeatedly state that Finney's pain was "under good control as long as he takes his med[icines]." (R. 345, 350, 352, 356, 359, 365, 503, 506, 509, 549, 553, 556). In other words, as the ALJ noted, Dr. Royse's treatment notes contradict his opinion that Finney suffers immobility due to his pain. *See Lewis*, 125 F.3d at 1440 (good cause exists if the physician's own treatment notes are inconsistent with his opinion).

Moreover, treatment records from other doctors also show Finney frequently reported little or no pain. For example, when Finney was treated by Dr. Dwight Luckett on October 13, 2008, April 13, 2009, and August 13, 2009, he reported pain at a level of zero, on a ten-point scale. (R. 380, 498, 497). Finney reported to Dr. Luckett on September 22, 2009, that he had a sore throat and his pain was at a level of two, (R. 498), and on March 15, 2010, that he had right shoulder pain, but the pain was rated as zero. (R. 568-69). When Finney returned to Dr. Luckett on March 29, 2010, he reported that his pain was not better, and on this visit it was rated as a five. (R. 566-67). Dr. Luckett ordered an MRI, which showed degenerative narrowing of the joint space, and a possible tear of the supraspinatus tendon. (R. 577). Interestingly, when Finney saw Dr. Luckett on June 14, 2010, Finney reported that his pain was zero. (R. 565). It simply defies logic that Dr. Royse would opine that Finney was immobilized due to chronic pain just a month after Finney rated his own pain as zero. While Finney may perhaps claim that there is no contradiction here since perhaps Dr. Royce based his assessment on a different period, the court does not need to delve into this issue because it is clear that Dr. Luckett's treatment records contradict and do not bolster Dr. Royse's opinions because they show Finney frequently reported no pain when seen by Dr. Luckett. *See Lewis*, 125 F.3d at 1440 (good cause exists when the evidence does not bolster the treating physician's opinion).

Put simply, Dr. Royce's opinions were conclusory, inconsistent with his own treatment records, and not bolstered by other evidence in the record. Moreover, the regulations make clear that Dr. Royse's statement that Finney "is unable to work at this time" is not a medical opinion, and is instead an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Denomme v. Commissioner, Social Sec. Admin.* 518 F. App'x 875, 878 (11th Cir. 2013) (finding a doctor's statement that claimant's condition would "likely prevent her from maintaining gainful employment" was not a medical assessment). Therefore, the ALJ had good cause for rejecting Dr. Royce's opinions, and committed no reversible error.

B. <u>The ALJ properly considered the opinion of the State agency reviewing physician.</u>

Finney argues next that the ALJ improperly gave "significant weight" to the opinions of Dr. R. Glenn Carmichael, the State agency reviewing physician who recommended a "light RFC with cardiovascular precautions." (R. 468). Specifically, Finney claims the ALJ did not adopt additional restrictions "presumably among the cardiac precautions assessed by [Dr. Carmichael]" that would include avoiding "hazards relating to exposure to [and] tolerance for heat, humidity, fumes, odors, dust and gases, and machinery or heights," and "preclude climbing of ropes, ladders and scaffolds." Doc. 8 at 8. Finney's contentions are unavailing.

10

An ALJ must consider the findings of a State agency medical consultant, who is considered an expert, and must explain the weight given to such findings in the same way as with other medical sources. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). Here, although the ALJ gave Dr. Carmichael's opinion "significant weight," he explained that he "also considered evidence received after [Dr. Carmichael] reviewed the file, in determining the specific limitations reflected in the residual functional capacity." (R. 25). Therefore, the court finds the ALJ properly considered the entire record in assessing Finney's RFC, and did not give excessive weight to Dr. Carmichael's opinions.

Moreover, even the additional restrictions suggested by Finney would not prevent him from performing the representative occupations of inspector and cashier identified by the ALJ. (R. 26). Neither of those occupations requires climbing, or exposure to weather, extreme cold, extreme heat, humidity, atmospheric conditions, moving mechanical parts, or heights. *See DICOT* 521.687-094, 1991 WL 674228 (G.P.O.); *DICOT* 211.11462-010 1991 WL 671840 (G.P.O.). Therefore, Finney would be able to perform these two occupations even if the ALJ had added the additional restrictions. Consequently, to the extent the ALJ erred by failing to include these additional restrictions in Finney's RFC assessment, any such error is harmless. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (unpublished) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983) ("When

. . . an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."*).*

      C.      <u>The ALJ did not fail to properly developed the record.</u>

Finally, Finney argues that a medical source opinion (MSO) supporting the ALJ's RFC assessment is required "as a practical matter to avoid [the ALJ] substituting his or her judgment for that of a physician." Doc. 8 at 10. However, Finney overlooks that the regulations and the law of this circuit do not impose such a requirement. Rather, the pertinent regulation provides that opinions on issues reserved to the Commissioner, such as a claimant's RFC, are not medical opinions:

> Opinions on some issues, such as the examples that follow, are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

20 C.F.R. §§ 404.1527(d), 416.927(d). One of the specifically reserved examples is a claimant's RFC:

> Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Consequently, the Eleventh Circuit has recognized that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors."

*Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (unpublished).  It has also found an ALJ's RFC finding can be supported by substantial evidence even if no medical source statement is in the record.  *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 922-23 (11th Cir. 2007) (unpublished) (rejected the claimant's argument "that without [the physician's] opinion, there [was] nothing in the record" to support the ALJ's RFC assessment).

Here, the ALJ properly relied on Finney's treatment records that showed his pain was under good control with medications, and other evidence to assess his RFC.  *See id.* (finding the ALJ properly relied on treatment records indicating that symptoms were controlled with medications in assessing the claimant's RFC).  Because there was sufficient medical evidence to allow the ALJ to assess Finney's RFC and determine whether he was disabled, the record was complete.  *See* 20 C.F.R. § 404.1513(e).  Consequently, no additional development was required, and the ALJ committed no reversible error.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Finney is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done the 4th day of June, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE